UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BETSY RENTAS,                )
        Plaintiff            )
                             )
             v.              )   C.A. 13-cv-30045-MAP
                             )
CAROLYN COLVIN,              )
Acting Commissioner of       )
the Social Security          )
Administration,              )
        Defendant            )

MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND DEFENDANT'S MOTION FOR ORDER AFFIRMING COMMISSIONER
(Dkt. Nos. 17 & 28)

March 26, 2014

PONSOR, U.S.D.J.

I.  INTRODUCTION

Plaintiff, Betsy Rentas, has appealed the final decision of Defendant, Carolyn Colvin, Acting Commissioner of the Social Security Administration, denying her Social Security Disability Insurance Benefits and Supplemental Security Income. The parties have filed cross-motions for judgment on the pleadings. At issue is whether the Administrative Law Judge (ALJ) erred in only placing "some" weight on the opinion of Plaintiff's treating therapist and

whether substantial evidence supported the ALJ's ultimate decision to deny Plaintiff benefits. Because the ALJ properly justified the weight placed on Plaintiff's treating therapist and relied on substantial evidence to reach her decision, the court will deny Plaintiff's Motion for Judgment on the Pleadings, (Dkt. No. 17), and allow Defendant's Motion for Order Affirming Decision of the Commissioner, (Dkt. No. 28).

## II. FACTS

Plaintiff was thirty-five at the onset of her alleged disability. (SSA Admin. R. of Soc. Sec. Proceedings 161, Dkt. No. 13 (hereinafter A.R.).) She alleged disability due to anxiety, depression, asthma, and neck and back pain. (A.R. 38, 41, & 237.) She had an eighth grade education and was previously employed as a van driver, hotel cleaner, salesperson, and general clerk. (A.R. 64 & 197.)

A. Medical Conditions[1]

On July 21, 2009, Plaintiff sought mental health treatment at City Clinic. There, she was seen by therapist

---

[1] Although Plaintiff alleged both mental and physical disabilities, her appeal centers around her mental impairments. As such, this memorandum will focus on those claims.

Katherine Fogg.[2] (A.R. 339.) Plaintiff had experienced symptoms of depression since her mother's death a year earlier. (Id.) This depression was augmented by a contemporary separation from her husband and difficulties in caring for her special-needs son. (A.R. 341.) Plaintiff informed the therapist that her primary care doctor had previously prescribed her anti-anxiety medication and anti-depressants. At that time, Ms. Fogg diagnosed Plaintiff with major depressive disorder and assigned her a Global Assessment of Functioning (GAF) score of 60.[3]

In September 2009, Plaintiff also saw Dr. Abel Gonzalez, a psychiatrist at City Clinic. Though Plaintiff informed Dr. Gonzalez that she experienced depressive symptoms, she denied suicidal or homicidal thoughts. (A.R. 337.) The doctor did not find evidence of delusions or psychotic content. (Id.) Dr. Gonzalez believed that Plaintiff could hold employment for a period of time and

---

[2] Ms. Fogg's precise qualifications are not provided in the record.

[3] A GAF score between "51-60" indicates "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text revision 2000)(hereinafter "DSM-IV").

that her prognosis was "good." (Id.) The doctor ultimately diagnosed Plaintiff with major depressive disorder, single episode, mild. (Id.) Like Ms. Fogg, he also assigned Plaintiff a GAF score of 60.

Between 2009 and 2011, Plaintiff sought treatment from Katherine Fogg on a bi-weekly basis. However, most of the notes from those sessions are not provided in the administrative record.

In January 2011, Plaintiff informed Ms. Fogg that she continued to suffer from depression and anxiety due to her family and financial situation. (A.R. 408-421.) She stated that she was easily distracted and also experienced panic attacks. (Id.) Ms. Fogg, on that occasion, assigned Plaintiff a GAF score of 55.

On May 27, 2011, Ms. Fogg completed a Mental Residual Functional Capacity ("RFC") assessment on Plaintiff's behalf. (A.R. 523.) In that questionnaire, Ms. Fogg confirmed that Plaintiff's depressive symptoms fluctuated, that she had poor stress management, and that she suffered from anxiety. (Id.) In Ms. Fogg's view, Plaintiff would be unable to meet competitive standards for regular attendance

and punctuality, for semiskilled or skilled work in the area
of dealing with stress, and for travel in unfamiliar places.
(A.R. 524-27.) Moreover, Plaintiff could not complete a
normal workday or workweek without interruption, could not
perform at a consistent pace, could not respond to changes
in the work environment, and could not deal with normal work
stress. (A.R. 524-25.) As a result of her conditions,
Plaintiff would also likely miss four days of work per
month. (A.R. 527.) Ms. Fogg concluded that these problems
would likely last at least twelve months, but, with
continued treatment, could be resolved within 12-24 months.
(A.R. 523 & 527.)

B. Disability Evaluations

Plaintiff also underwent a consultive psychological
examination on September 2, 2009, with Dr. Victor Cabone.
Plaintiff discussed her depression, (A.R. 353), and,
according to the doctor, appeared depressed. (A.R. 354.)
Plaintiff denied suicidal or homicidal thoughts, was
cooperative and fully oriented, had insights into her
difficulties, and did not seem to show signs of
hallucinations or a thought disorder. (A.R. 354-55.) The

doctor ultimately diagnosed Plaintiff with a depressive disorder, not otherwise specified, and assigned her a GAF score of 57.

In addition to the consultive examination, Dr. Jon Perlman, a state agency psychologist, reviewed Plaintiff's medical record and completed a mental RFC assessment. He concluded that Plaintiff was able to understand and remember simple instructions, was capable of completing simple routine tasks, and could sustain concentration for at least two hours in simple one- and two-step tasks. (A.R. 357-58.) Plaintiff could also relate in a socially appropriate manner and had no limitations in the area of adaptation. (Id.) Finally, Dr. Perlman found Plaintiff to be moderately limited in completing a normal workday or workweek without interruption or unreasonable periods of rest. (Id.)

C.  ALJ Hearing

Plaintiff's ALJ hearing, originally scheduled for February 23, 2011, was continued until July 14, 2011, to permit Plaintiff to obtain counsel. The hearing occurred before ALJ Penny Loucas. F. Bruce Ferin, a non-attorney

representative of the Law Office of Thomas M. Libbos, represented Plaintiff.

At the hearing, Plaintiff testified about her mental and physical impairments.[4] Plaintiff described her anxiety and depression, her difficulty concentrating, her trouble following directions, her memory problems, her limited sleep, and her inability to manage stress. (A.R. 60-62.) She said that she needed constant breaks when she worked, often had feelings of guilt and worthlessness, and had suicidal thoughts and decreased energy. (A.R. 60.) Moreover, she discussed her episodes of paranoia which were exacerbated by being around people. (A.R. 60-61.) As a result, she testified that she avoided social interactions. (Id.)

Plaintiff also discussed her daily activities. Plaintiff would avoid driving when she could, though she did consistently walk her daughter to school. (A.R. 52-53.) She mentioned that she had minimal concentration and, as a result, sat around a significant amount. (A.R. 39 & 53-54.)

---

[4] As to her physical symptoms, Plaintiff testified that she suffered from asthma which she treated with a nebulizer machine approximately one to two times per month. (A.R. 41 & 58.) She also received allergy shots.

-7-

Finally, Plaintiff testified that she often tried to do certain chores, but left them unfinished because of her impairments. (Id.)

A vocational expert, Robert T. Paterwic, also testified at the hearing. The expert began by discussing Plaintiff's past work activity. He classified her prior work as a general clerk as involving light exertion, some walking, and some handling. The work was unskilled and did not require a high school diploma. (A.R. 64.)

The ALJ then asked the expert a number of hypothetical questions about the availability of work, assuming Plaintiff's age, education, and experience, if a number of limitations were imposed. The ALJ's hypotheticals, four in total, progressively increased the theoretical limitations and included restrictions on: an individual's memory, an ability to maintain concentration, persistance and pace on a consistent basis, and the need to be off task ten percent of the day. The expert continuously concluded that the individual could perform Plaintiff's prior work as a general clerk. (A.R. 65-68.) Only when Plaintiff's representative asked what jobs were available if the individual needed to

take a break every hour for ten minutes did the expert opine
that such an individual would be unemployable. (A.R. 69-
70.)

D.  ALJ Decision

The ALJ followed the five-step sequential disability
determination. 20 C.F.R. § 416.920. At step one, the ALJ
found that Plaintiff had not been engaged in substantial
gainful activity since the alleged onset date of her
disability. (A.R. 12.) At step two, the ALJ classified
Plaintiff's major depressive disorder, anxiety, asthma,
lumbago, cervicalgia, and cervical osteoarthritis as severe
impairments. (Id.) At step three, the ALJ determined that
Plaintiff's impairments did not meet or medically equal an
entry on the List of Impairments. (A.R. 13.) Proceeding to
step four, the ALJ found that Plaintiff had a RFC to perform
"light work" as defined in 20 C.F.R. §§ 404.1567(b) &
416.967(b),[5] with the following limitations:

> she would need to avoid concentrated exposure to

---

[5] "Light work" involves "lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing
up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). It
may also require a good deal of walking, standing, or
sitting with some light pushing or pulling of arm or leg
controls.

-9-

>     extreme cold, fumes, respiratory irritants, pets, mold,
>     and mildew. She would have no limitations on memory.
>     She would be limited to constant, simple, and detailed
>     instructions sufficient to qualify for semi-skilled
>     work. She could maintain concentration, persistence, or
>     pace for two hours at a time over an eight-hour day,
>     five days a week.

(A.R. 14.)

In reaching this decision, the ALJ only accorded "some weight" to the opinion of Katherine Fogg, Plaintiff's treating therapist. The ALJ provided four reasons for limiting the weight of this opinion. First, Ms. Fogg noted that Plaintiff could improve in 12 to 24 months of treatment, thus indicating that the impairment would not disable Plaintiff from all work for a period greater than 12 months. (A.R. 20.) Second, her opinion about Plaintiff's ability to maintain competitive standards in many areas was inconsistent with other evidence. This included Dr. Gonzalez's treatment notes and the consultive examination. (Id.) Third, as a therapist, Ms. Fogg was not entitled to "treating source," controlling weight. (Id.) Finally, Ms. Fogg did not provide a detailed narrative to explain why she believed Plaintiff would miss more than four days of work each month, thus minimizing the value of the opinion. (Id.)

-10-

With all of this in mind, at step four, the ALJ found Plaintiff capable of performing her past relevant work as a general clerk. (A.R. 25.) Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined under the law.

### III. DISCUSSION

#### A. Standard of Review

A district court reviewing an ALJ's decision must determine whether the conclusion was "supported by substantial evidence and based on the correct legal standard." 42 U.S.C. § 405(g); Manso-Pizzarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st. Cir. 1996). Because the responsibility for weighing conflicting evidence belongs to the Commissioner, Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001), her findings "as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). Substantial evidence means that "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citations omitted).

#### B. Treating Mental Health Provider

Plaintiff first argues that the ALJ improperly minimized the weight accorded to the opinion of Plaintiff's treating therapist, Ms. Fogg. The ALJ was permitted to give considerable weight to the therapist, 20 C.F.R. § 404.1513(d), and was required to provide legitimate reasons if she chose not to. See Taylor v. Astrue, 899 F. Supp. 2d 83, 88 (D. Mass. 2012). The ALJ, in Plaintiff's view, failed to adequately explain why Ms. Fogg's opinion was disregarded to the extent it was.[6]

Plaintiff's argument is not supported by the ALJ's decision. It is, instead, quite clear that the ALJ offered a number of proper reasons for limiting the weight of Ms. Fogg's opinion. First, the ALJ concluded that the opinion was internally inconsistent. In finding that Plaintiff could improve within 12-24 months, the therapist contradicted her own conclusions respecting Plaintiff's

---

[6] The ALJ, according to Plaintiff, also improperly stated that Ms. Fogg's opinion was "an attempt to increase the likelihood of the claimant obtaining disability benefits" and was, therefore, not "an objective assessment." (A.R. 20.) Though an ALJ is not permitted to solely consider the reason a party sought a medical opinion in determining disability, Rodriguez v. Astrue, 694 F. Supp. 2d 36, 43 (D. Mass. 2010), the opinion is still legally sound when the ALJ provides other, valid reasons. Arroyo v. Barnhart, 295 F. Supp. 2d 214, 221 (D. Mass. 2003).

inability to work in the future. That is, if Plaintiff could improve within a year, she was not limited in the way Ms. Fogg indicated.

Second, the ALJ concluded that Ms. Fogg's opinion was incompatible with the medical records, including Dr. Gonzalez's evaluation and the consultive examination. These inconsistencies permitted the ALJ to limit the weight of Ms. Fogg's opinion. See Gregory v. Astrue, No. 11-v-30281-KPN, 2012 WL 5899235 at *4-5 (D. Mass. Oct. 25, 2012).

Finally, Ms. Fogg did not provide a detailed narrative justifying her position, nor did she provide substantial medical records justifying her opinion. Absent such a narrative or documentation, the ALJ was permitted to minimize the value of the opinion. 20 C.F.R. §§ 404.1527(c)(3) & 416.927(c)(2).

A final note on this argument is warranted. Even if the ALJ incorrectly minimized Ms. Fogg's opinion, a remand would still not be appropriate. Ms. Fogg concluded that Plaintiff could likely improve within 12-24 months. Thus, even under Ms. Fogg's view, Plaintiff was not guaranteed to meet the durational requirement of "disability" under the

law. 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A) (noting that a claimant must establish an inability to work for over twelve months to qualify as "disabled" under the statute). Plaintiff therefore would still not be entitled to benefits, and remand would be futile. See <u>Ward v. Comm'r of Soc. Sec.</u>, 211 F.3d 652, 656 (1st Cir. 2000)("While an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise.")(citations omitted).

C. <u>Plaintiff's Subjective Symptoms and Substantial Evidence</u>

Plaintiff's second contention is that the ALJ did not rely on substantial evidence when she discounted Plaintiff's subjective complaints. From Plaintiff's perspective, her testimony respecting her depression and her associated limitations was consistent with the medical documentation. <u>See</u>, <u>e.g.</u>, (A.R. 50("I can't concentrate. I'm constantly sad. I don't sleep. I'm constantly depressed.").)

Though the evidence certainly demonstrates that Plaintiff suffered some degree of impairment, more than substantial evidence supports the ALJ's decision to discount Plaintiff's description of the severity of her subjective

-14-

symptoms and to find that, though Plaintiff was impaired, she could function with limitations.

For example, Plaintiff underwent a number of in-person evaluations where the doctors found Plaintiff to be capable of work. Dr. Gonzalez noted that Plaintiff was calm and cooperative, her thought process was coherent, her insight fair, and that she was capable of working. (AR. 337.) He ultimately concluded that Plaintiff "appears to have a good prognosis." (Id.) A consultive examination with Dr. Victor Cabone yielded the same results. (A.R. 354-55("There was no evidence of a thought disorder . . . . Memory and abstraction were both intact. Her judgment appeared be [sic] grossly intact with insight into her difficulties.").)

Moreover, Plaintiff's diagnoses, including the one provided by Ms. Fogg, did not compel the conclusion that Plaintiff was disabled. Every GAF score assigned, for instance, ranged from 55 to 60 -- indicating "moderate" symptoms or "moderate" difficulty in functionality. While a relatively benign GAF score does not have automatic controlling weight, it is one piece of evidence an ALJ may consider.

The RFC assessment by Dr. Jon Pearlman also justified the determination. Dr. Perlman found Plaintiff, consistent with the record, to be only "moderately" limited. She was, in the doctor's view, able to perform the tasks needed to function in a work environment. (A.R. 357-58.)

Finally, though Plaintiff testified to difficulties in her daily life, the ALJ made an assessment that Plaintiff's broad statements did not comport with the specific medical evidence. (A.R. 24("[T]here are instances where the claimant's symptoms are not corroborated by the objective physical findings.").) More importantly, Plaintiff's own testimony also underscored her ability to complete significant daily tasks and to follow written instructions. (A.R. 25.) The ALJ's credibility analysis and her decision to minimize Plaintiff's broad conclusions about her capabilities were therefore a proper exercise of discretion. See Rodriguez, 647 F.2d at 222.

## IV. CONCLUSION

This court, were it reviewing the case de novo, might reach a different conclusion. But, here, where there is

substantial evidence justifying the result that was reached, the court is obliged to affirm it.

For these reasons, the court DENIES Plaintiff's Motion for Judgment on the Pleadings, (Dkt. No. 17), and ALLOWS Defendant's Motion for Order Affirming Decision of the Commissioner, (Dkt. No. 28). The clerk shall enter judgment for Defendant, and this case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge